Argued February 19, reversed and remanded March 5, modified on petition for rehearing April 9, 1918.

## McLEMORE v. WESTERN UNION TEL. CO.*

(171 Pac. 390, 1049.)

**Master and Servant—Benefit Fund—Scope of Plan—Construction.**

1. A plan of benefits voluntarily promulgated by a large employer, which creates and maintains the fund from which they are to be paid, should not be extended by the courts to embrace cases falling without the intention of its author, as manifested by a fair and just construction of its language.

**Master and Servant—Benefit Fund—Contract.**

2. A plan of benefits promulgated by an employer company, providing that all in its employ on or after a certain day shall be entitled to insurance against death by accident in their work, and that claims for death benefits shall be payable at a time stated, being brought to the attention of all employees, constitutes a contract, it being presumed to be accepted by an employee remaining in its service, and his services thereafter rendered being sufficient consideration to support the promise.

**Master and Servant—Benefit Fund—Right Under Plan—Submission to Committee—Waiver.**

3. Right of employer, under its plan of benefits for employees, to have the facts decided by the committee, is waived by its answer in

---

*On construction and effect of Workman's Compensation Acts generally, see comprehensive notes in L. R. A. 1916A, 23; L. R. A. 1917D, 80.    REPORTER.

an action for benefits, admitting the facts are as stated in the complaint.

### Master and Servant—Benefit Fund—Determination by Committee.

4. Under the rule of *expressio unius exclusio alterius*, it is to be inferred from provision in an employer's plan of benefits for employees, that questions of fact shall be determined conclusively by the committee, that the committee has no authority to bind either party by any decision on a question of law.

### Master and Servant—Benefit Fund—Action—Submission to Committee.

5. Though the plan of benefits promulgated by an employer declares the employer's obligation limited to the appointment of a committee to administer the funds according to the regulations, and to make payments out of the fund on the order of the committee, yet, it limiting the committee's power to the determination of the facts, and the employees contract for insurance, to which insurance the plan declares an employee entitled, being with the employer, and the claim for benefit against it, a right which 'the courts are competent to enforce arises by operation of law, on the facts being determined by action of the committee or by agreement of the parties, so that failure of the committee to act on a claim does not bar maintenance of action thereon; the employer's answer admitting the fact to be as alleged in the complaint.

### Pleading—Complaint—Aider by Subsequent Pleadings.

6. Failure of complaint to allege tender of release of liability, delivery of which is by contract made a condition to right of payment, is aided by answer, showing that defendant denies all liability, so that tender would have been unavailing.

### Master and Servant—Benefit Fund—Tender of Release—Waiver.

7. A tender of release of liability made, by contract between employer and employee for death benefit, a condition of payment is waived by employer's denial of all liability.

### Master and Servant — Benefit Fund — Provision of Plan — Benefits Under State Law.

8. Provision of voluntary plan of benefits for employees promulgated by an employer doing business throughout the country, that in case any employee or his beneficiaries shall be entitled under the law of any state to any compensation greater than that herein provided, the amount paid the employee shall be that provided by the statute (though drawn by one evidently familiar only with compensation laws providing for payments by employer directly to employee), applies in case of a state compensation law, thereafter enacted, under which payments are made by the state, from a fund supplied chiefly by contributions of employers.

### Master and Servant — Benefit Fund — Provision of Plan — Payment Under State Law.

9. Provision of voluntary plan of benefits for employees promulgated by an employer, that in case any employee or his beneficiaries shall be entitled under the laws of any state to any compensation greater than that therein provided, the amount paid to the employee

shall be that prescribed by the statute, means that it shall be read in the light of the law of the state in which the employee resides and is injured, and that, if the benefit to which the law entitles him or his beneficiaries is greater than provided by the plan, the larger benefit shall be paid, and shall exclude right to the smaller, and that, if the amount provided by the statute is less than that provided by the plan, the employer shall pay such sum as, added to the statutory payment, shall equal the sum provided by the plan.

**Master and Servant—Benefit Fund—Burden of Proof Under Plan—Greater Benefit Under State Law.**

10. A widow of a deceased employee being under a plan of benefits promulgated by the employer entitled to recover of it a certain sum on account of his death, unless her right is barred by the provision of the plan denying the right if the benefit provided for her by the statute is greater than that provided for her by the plan, the employer has the burden of showing it is greater.

**Master and Servant — Benefit Fund — Right Under Plan — Greater Benefit Under State Law—Evidence.**

11. The employer fails in his necessary showing that the benefit provided by statute for the widow of an employee killed in his work—$30 a month as long as she lives and remains unmarried—exceeds that provided by benefit plan promulgated by the employer—$2,700—there being no presumption that she will remain unmarried for eight years, so that she is entitled to judgment.

**Master and Servant—Benefit Fund—Amount of Recovery.**

12. Benefits provided by statute for widow of employee killed in his work—$30 a month as long as she lives and remains unmarried—not being shown to exceed the benefit of $2,700, provided by the plan of benefits promulgated by the employer, she is entitled to judgment under such plan to $2,700, less the sum she shall have received from the Industrial Accident Commission at the time judgment is entered.

## ON REHEARING.

**Master and Servant—Benefit Fund—Amount of Recovery.**

13. In action for benefit from employers' fund on death of workman, where answer set up defendant's election to accept the Laws of 1913, page 188, and that plaintiff filed claim to compensation under such act, and the state treasurer set aside for her benefit a sum of money from which she had received certain amounts, the master was entitled to the credits of all sums so paid and set aside to the plaintiff.

**Master and Servant—Benefit Fund—Construction.**

14. The rule that a contract is to be strongly construed against the party drawing it does not apply to the employers' benefit fund rules drawn by him where he was under no obligation to inaugurate such a plan.

**Master and Servant—Benefit Funds—Deductions.**

15. Where widow of workman had been allowed certain sums by the state under the Workmen's Compensation Act, and she sued for the amount of the employers' benefit fund, the sum of $300 as ten

monthly allowances payable if plaintiff remarried under Laws of 1913, page 199, should be deducted from the amount recoverable under the benefit plan.

From Multnomah: Henry E. McGinn, Judge.

Department 2. Statement by Mr. Justice Mc-Camant.

This is an action brought by Jessie McLemore, the widow of Homer McLemore, to recover the sum of $2,700 claimed to be due her as a life insurance benefit under a plan promulgated by the defendant January 1, 1913. It appears that Homer McLemore entered the employ of the defendant in March, 1912, and remained in such employ until March 1, 1915, when he lost his life through accident while in the performance of his work. While plaintiff's husband was working for defendant, the latter announced a plan for employees' pensions, disability benefits and insurance, which, under the contention of plaintiff, constituted a contract with each of its employees. The salient provisions of the plan are as follows:

"1. Object.

"The Company undertakes in accordance with these Regulations, to establish, maintain and administer a Fund to be known as the 'Employees' Benefit Fund' for the payment of definite amounts to its employees when they are disabled by accident or sickness or when they are retired from service, or, in the event of death, to their dependent relatives.

"2. Definitions.

"3. The word 'Committee' shall mean the persons appointed by the Board to administer the Employees' Benefit Fund in accordance with approved Regulations.

"4. The word 'Employees' shall mean those persons who receive a regular and stated compensation from the Company other than a pension or retainer.

"5. The word 'Fund' shall mean the 'Employees' Benefit Fund' as set forth in the first paragraph of these Regulations.

## "3. The Fund.

"1. The Company has made an appropriation for the establishment of the Fund and agrees to make further appropriations as provided in Section 11.

"2. The Company shall be the custodian of the Fund which shall draw interest at the rate of 4% per annum on the average balance payable semi-annually.

"3. The Company guarantees the disbursement of the Fund in accordance with these Regulations.

## "4. Committee.

"1. There shall be a Committee of five (5) appointed by the Board to serve during its pleasure, which Committee shall be charged with the administration of the plan and the Fund hereby established. This Committee shall be called The Employees' Benefit Fund Committee and shall be empowered to employ a Secretary and such other assistants as may be required in the administration of the Fund.

## "8. Life Insurance.

"1. All employees of the Company on January 1, 1913, or thereafter shall be entitled to insurance against death by accident occurring in and due to the performance of work for the Company. This insurance shall be paid to the employees' beneficiaries as hereinafter provided, and shall equal three years' average wages as hereinafter defined, but in no case shall it exceed Five Thousand Dollars ($5,000).

## "9. General Provisions.

"3. Benefits may be suspended or terminated by the Committee in all cases of gross misconduct.

"19. Payment of benefit on account of death of an employee shall be made in the following order; provided, however, that upon written application of an employee, and good cause shown, the Committee shall authorize a change in such order of payment, but no

persons other than the beneficiaries herein designated shall receive payment on account of such benefit:

"First: To the wife (or husband) of such employee, if dependent upon him (or her) for support.

"20. Claims for death benefits will be payable within thirty days after the required evidence of their validity is furnished.

"21. All claims for death benefits, to be valid, must be made within one year from the date of the alleged death on which the claim is based.

"28. In case of injury to or death of an employee entitling him or his representatives or beneficiaries to benefits under these Regulations, he or they may elect to accept such benefits or to prosecute such claims as he or they may have at law against the Company.

"29. Should claim otherwise than hereunder be presented or suit brought against the Company, or against any other Corporation, which may be at the time associated therewith in administration of the Employees' Benefit Fund, for damages on account of injury or death of an employee, such employee or his beneficiaries shall not be entitled to any payment from the Employees' Benefit Fund on account of such injury or death, unless such claim shall be withdrawn or such suit shall be discontinued before trial thereof or decision rendered therein.

"31. The acceptance of any benefits from the Employees' Benefit Fund by an employee or his beneficiary or beneficiaries, on account of injury or death, shall operate as a release and satisfaction of all claims against the Company for damages arising from or growing out of such injury or death, and further, in the event of the death of an employee no part of the death benefit or unpaid disability shall be due or payable unless and until good and sufficient release shall be delivered to the Committee, of all claims against the Employees' Benefit Fund as well as against the Company, arising from or growing out of the death of the employee, said release having been duly executed by all who might legally assert such claims.

"32. In case any employee or his beneficiaries shall be entitled under the laws of any State to any com-

pensation, pension or other benefit greater than that herein provided, the amount paid to the employee shall be that prescribed by statute. The Committee are authorized to pay the amount of such liability in the manner prescribed by law instead of in accordance with the provisions contained herein. In case the statutory liability is less than the Company's liability hereunder, the Committee may make the payments required by law and shall pay to such employee or to those persons entitled to take hereunder the excess of the amount payable hereunder above the amount so paid in accordance with law. In case any statutory payment has to be made or any judgment is recovered by an employee or his beneficiaries against the Company on account of the legal liability above described or any liability for damages on account of accident or death, or on account of any liability hereunder, the amount of the statutory payment or judgment shall be chargeable to the Fund.

"33. Questions of fact arising in the administration of these Regulations shall be determined conclusively for all parties by the Committee.

"11. Obligation of the Company.

"The obligation of the Company is limited:

"First: To safeguarding the sum already appropriated.

"Second: To crediting said sum 4% per annum of the unexpended balance of the Fund.

"Third: To the appointment of a Committee to administer the Fund according to these Regulations.

"Fourth: To making payments out of the Fund upon the order of the Committee.

"Fifth: To adding to the Fund at the end of each fiscal year such amount as will restore it to the original amount, provided that such addition shall in no year exceed 4% of the Company's pay-roll.

"13. Change in Regulations.

"The Committee, with the consent of the President, may from time to time make such changes in these Regulations as in their judgment will more effectually

carry out the purpose expressed therein, but such changes shall not without his consent affect the rights of any employee to any benefit, insurance or pension to which he may have previously become entitled hereunder.''

In 1913 the legislature of this state enacted a law, published as Chapter 112 of the Session Laws for that year, which provides for compensation to employees injured and dependent relatives of employees killed in the occupations coming under the operation of the statute. Both defendant and the deceased elected to assume the obligations and accept the benefits defined by this legislation. On the death of her husband plaintiff applied to the Industrial Accident Commission and it was adjudged that she should receive the sum of $30 a month so long as she should remain unmarried, and the additional sum of $6 a month for the care of a child born to her after the death of her husband, the latter payments to terminate when the child should become sixteen years of age. These are the payments prescribed by Section 21 of the Act of 1913 and it is admitted that plaintiff has been receiving them. Plaintiff was nineteen years of age on March 5, 1915, and her expectancy of life was 42.87 years. If she lives out her expectancy and remains unmarried she will receive $15,433 from the state for herself and $1,152 for her child. Her husband was earning $900 a year at the time of his death; under the defendant's plan plaintiff is entitled to $2,700 if she is entitled to anything. The lower court held that the payments to which plaintiff is entitled under the act of 1913 are a greater benefit than that provided under the defendant's plan and that plaintiff's right to recover was barred by the provisions of Section 32 of Article 9 of the plan above quoted. A directed verdict was

given for defendant, judgment was entered thereon
and plaintiff appeals.    Reversed and Remanded.

For appellant there was a brief and an oral argument by *Mr. Virgil A. Crum.*

For respondent there was a brief over the names
of *Messrs. Dolph, Mallory, Simon & Gearin* and *Mr.
Hall S. Lusk,* with an oral argument by *Mr. Lusk.*

McCAMANT, J.—1. It is contended that the plan
promulgated by the defendant should be treated like a
policy of life insurance and construed strictly against
defendant.    This contention is supported by *Western
Union Tel. Co.* v. *Hughes,* 228 Fed. 885 (143 C. C. A.
283).    We are committed to such strict construction in
the case of a life insurance policy: *Stringham* v. *Mutual Ins. Co.,* 44 Or. 447, 448 (75 Pac. 822).    This is not
an action on a life insurance policy.    The defendant is
not a life underwriter, but a telegraph company.    Its
promulgation of the plan under which this action is
brought is differentiated from an ordinary transaction
in the commercial world.    The protection and benefits
assured by the defendant to its employees impose upon
the defendant a burden greater than any exacted from
employers by the law in its present state of development.    The fund from which these benefits are paid
is created and maintained by the defendant; there is
no provision for deductions from the wages of the employees for the benefit of the fund.    A plan of this
character voluntarily promulgated by a large employer
of labor should not be extended by the courts so as to
embrace cases falling without the intent of the author
of the plan as manifested by a fair and just construction of the language used.    These principles of construction seem to be applied by the appellate division

of the Supreme Court of New York in *McNevin* v. *Solvay Process Co.*, 32 App. Div. 610 (53 N. Y. Supp. 98), a case affirmed by the Court of Appeals: 167 N. Y. 530.

2. It is contended that the plan is a mere benefaction and that the evidence fails to sustain the charge in the complaint that it constitutes a contract made by the defendant with its employees. It is provided in Article 8, Section 1:

"All employees of the Company on January 1, 1913, or thereafter shall be entitled to insurance against death by accident occurring in and due to the performance of work for the Company."

The plan, containing this offer, was brought to the attention of all employees. The language used imports a right in the employee to the protection specified. The statement in Section 20 of Article 9 that claims for death benefits will be payable at a time stated implies an obligation of the defendant to make such payments. Section 28 of Article 9 quoted above clearly implies the creation of a right under the plan which may be asserted or waived at the election of the employees. In effect, the defendant said to its employees:

"If you remain in the discharge of your duties, those dependent upon you shall be entitled to benefits in the event of your death, to the extent of the sums specified in this plan."

Plaintiff's husband did remain in defendant's employ and lost his life while in the performance of his duties. We find here all the elements of a contract.

"Where the offer is to do something if the offeree will not merely promise to do, but do, something, compliance with the condition of the offer by doing the act

in the way prescribed is ordinarily sufficient evidence of the acceptor's assent'': 13 C. J. 284.

We are committed to the foregoing principle by *Fisk v. Henarie*, 13 Or. 156, 168 (9 Pac. 322). Plaintiff's husband must be deemed to have accepted the plan offered and his services rendered subsequent to the promulgation of the plan are a sufficient consideration to support the defendant's promise to pay. While this question is not discussed in *Western Union Tel. Co.* v. *Hughes*, 228 Fed. 885 (143 C. C. A. 283), the effect of the opinion is to decide that the plan offered by the defendant constitutes a contract with its employees on which an action may be maintained. In *McNevin* v. *Solvay Process Co.*, 32 App. Div. 610, 617, the defendant admitted that a similar scheme to that with which we are concerned constituted a contract between employer and employees.

3-5. Under Article 11 of the plan,

"the obligation of the Company is limited: * * Third: To the appointment of a Committee to administer the Fund according to these Regulations. Fourth: To making payments out of the Fund upon the order of the Committee."

It is neither alleged nor proved that the committee has acted on plaintiff's claim and defendant contends that for this reason plaintiff's suit cannot be maintained. Defendant relies on *Legg* v. *Swift & Co.*, 167 Mo. App. 427 (151 S. W. 230), and *McNevin* v. *Solvay Process Co.*, 32 App. Div. 610 (53 N. Y. Supp. 98). In the first of these cases plaintiff's claim was not against the defendant, but against an association organized at the instance of the defendant for the protection of defendant's employees. The fund was created wholly by deductions from the wages of the employees and the defendant was merely the treasurer of the fund.

A demurrer to the petition was sustained in the lower court and this action was affirmed. In the case at bar the contract of the deceased was with the defendant and plaintiff's claim if valid at all is against defendant. In *McNevin* v. *Solvay Process Co.* the plan provided that the funds available should be and remain the sole property of defendant until paid over to the employee and that in no case could an employee demand payment except when the defendant through its trustees should adjudge him entitled thereto. The defendant's trustees were entitled under the plan to decide without appeal all questions both of law and of fact. It was held that the employee had no vested right in the fund until payment was made to him.

The functions of the defendant's committee are by no means so extensive as those of the trustees in the New York case. It is provided in Section 33 of Article 9 of the plan that "Questions of fact arising in the administration of these Regulations shall be determined conclusively for all parties by the Committee." Under this provision it was competent for the defendant to refuse payment of plaintiff's claim until the facts on which it is based had been determined in her favor by the committee. It has waived this right by admitting in the answer that the facts with reference to the employment of plaintiff's husband and his accidental death while in defendant's service are as stated in the complaint. *Expressio unius exclusio alterius.* The inference is that the committee has no authority to bind either the defendant or one of its employees by any decision on a question of law. It is provided by Section 1 of Article 8, quoted above, that plaintiff's husband was entitled to life insurance. A right was created subject to the determination of the facts on which the right is dependent in the manner set out in

the plan. A fair construction of the plan leads us to the conclusion that when the facts are once determined, either by the action of the committee or by agreement of the parties, a right arises by operation of law which the courts are competent to enforce. The failure of the committee to act on plaintiff's claim does not bar the maintenance of this action.

6, 7. It is provided in Section 31 of Article 9:

"In the event of the death of an employee no part of the death benefit or unpaid disability shall be due or payable unless and until good and sufficient release shall be delivered to the Committee, of all claims against the Employees' Benefit Fund as well as against the Company, arising or growing out of the death of the employee, said release having been duly executed by all who might legally assert such claims."

We think that plaintiff should have tendered the release specified above and demanded the sum she claims from the defendant. Such tender should have been alleged in the complaint. In this respect, however, the complaint is aided by the answer. It appears from the defendant's pleading that such a tender would have been unavailing as the defendant denies all liability to plaintiff. The law does not exact a vain thing. The allegations of the answer excuse the failure of plaintiff to make tender of the release called for by the provision above quoted: *Merrill* v. *Hexter,* 52 Or. 138, 144 (94 Pac. 972, 96 Pac. 865); *Livesley* v. *Krebs Hop Co.,* 57 Or. 352, 367 (97 Pac. 718, 107 Pac. 460, 112 Pac. 1); *Woods* v. *Wikstrom,* 67 Or. 581, 601 (135 Pac. 192); *Wallowa Lake Amusement Co.* v. *Hamilton,* 70 Or. 433, 447 (142 Pac. 321). It should be noted in this connection that the acceptance by plaintiff of any money from the fund created by defendant operates to discharge defendant from any

claim which might otherwise be asserted by plaintiff because of the death of her husband. Such is the express provision of Section 31 of Article 9 of the plan.

8, 9. This brings us to the point on which the case turned in the lower court. Section 32 of Article 9 of the plan provides:

"In case any employee or his beneficiaries shall be entitled under the laws of any State to any compensation, pension or other benefit greater than that herein provided, the amount paid to the *employee* shall be that prescribed by the statute."

Plaintiff contends that the entire section of the plan from which the above words are quoted should be disregarded because the author of the plan had in mind compensation laws under which the benefits are paid by the employer and that the Oregon statute, under which the payments are made by the state, is wholly without the scope and purview of this section. We are not favorably impressed with this contention. The fund from which the state makes payments under the act of 1913 is supplied chiefly by contributions made by employers of labor. Most of the payments made to the employees and their beneficiaries are made indirectly by the employers. Giving to the plan the fair construction to which it is entitled, an intention is manifested that it shall be read in the light of the laws of the state in which the employee resides and in which he is injured. If the benefit to which he or his beneficiaries are entitled under the law is greater than the benefit provided by the plan, the larger benefit shall be paid and shall exclude any right to the smaller benefit for which defendant has made provision. If the amount provided by statute is less than that provided by the plan, the company shall pay to the employee or his beneficiaries such sum as, added to the

88 Or.—16

statutory payment, shall equal the sum provided by the plan. At the time when the defendant promulgated its scheme the Oregon statute had not been enacted. The author of the plan was evidently familiar only with compensation laws which provided for payments by the employer directly to the employee. The intention is nevertheless apparent from the language used in Section 32 of Article 9 and it should be given effect as above stated.

10–12. It remains to apply these facts to the instant case. Under the plan plaintiff is entitled to $2,700. Under the statute she is entitled to $30 a month so long as she lives and remains unmarried. If she lives and remains unmarried for as much as eight years, she will receive under the statute a larger sum than that provided by the plan. If she dies or marries within seven years, the benefit prescribed by the plan is greater than that provided by the statute. She was nineteen years of age at the time of her husband's death and the record justifies the presumption that she will live 42.87 years. There is no presumption that she will remain unmarried for that period or for eight years.

We have seen that plaintiff is entitled to recover unless her right is barred by the provisions of Section 32 of Article 9 of the plan. Under this section the burden devolves on defendant to show that the benefit provided for plaintiff under the act of 1913 is greater than that provided by the plan. Defendant's showing is defective for the reason that plaintiff may marry within seven years from the death of her husband. It does not appear from this record that her benefit under the law is greater than that under the plan. Defendant, having failed to show this fact, has failed to make out its defense. Plaintiff is entitled to judgment for $2,700, less the sum she shall have received from the

Industrial Accident Commission at the time when the judgment is entered. In figuring this amount she should not be charged with the sum of $6 a month paid for the care of her child. If the parties are unable to agree as to the credit to which the defendant is entitled, the amount can be determined at a hearing in the Circuit Court.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.                                REVERSED AND REMANDED.

MODIFIED ON PETITION FOR REHEARING.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.

---

Former opinion modified April 9, 1918.

PETITIONS FOR REHEARING.

(171 Pac. 1049.)

*Messrs. Dolph, Mallory, Simon & Gearin* and *Mr. Hall S. Lusk,* for respondent's petition.

*Mr. Virgil A. Crum,* for appellant's petition.

Department 2.

McCAMANT, J.—13. Both parties have petitioned for a rehearing. Their petitions challenge practically every proposition announced in the former opinion. Plaintiff contends that we have given defendant the benefit of a defense not pleaded. The answer sets up the election of defendant to accept the benefits of Chapter 112 of the Laws of 1913; it is charged that plaintiff filed her claim to compensation under this act March 3, 1915; that the State Treasurer on March 5, 1915, set aside for plaintiff's benefit a sum of money and

"that ever since the 15th day of March, 1915, the plaintiff has been receiving payments of $30 per month from the moneys set aside for her, and since the 31st day of May, 1915, has been receiving the additional sum of $6 per month on behalf of said child."

The answer also pleads the stipulations of the plan on which defendant relies. We think that the allegations are sufficient to entitle defendant to the credits allowed it in the former opinion.

14. Plaintiff quarrels with the rule announced for the construction of the plan. Authorities are cited to the effect that a contract is to be most strongly construed against the party drawing it. This principle, as applied to ordinary commercial contracts, is well established, but it is inapplicable to the instrument which is the basis of this litigation. Defendant was under no legal obligation to provide this protection for its employees. It is not suggested that the compensation paid the deceased was diminished by a dollar when the plan was promulgated. The entire fund was created by defendant. We agree with plaintiff's counsel in his claim that the promulgation of the plan inured to the advantage of defendant. Broad-gauge, generous conduct is usually well advised, even from a selfish standpoint. It is contrary to fair dealing to enlarge by construction the burdens assumed by an employer of labor who voluntarily provides for such a system of pensions and benefits. The duty of the court is to ascertain the intent of the parties; that of the defendant in announcing the plan and that of the deceased in remaining in defendant's employ after the plan was put in effect. This intent is to be gathered from a fair and impartial interpretation of the language used.

It is true that prior to the promulgation of defendant's plan the states of Ohio and Washington had

adopted statutes similar to Chapter 112 of the Laws of Oregon for the year 1913.   It is nevertheless apparent that the author of the plan was familiar only with industrial accident legislation providing for payments by the employer directly to the employee.

The other contentions of plaintiff have been duly considered, but it would unnecessarily prolong this opinion to discuss them.

Defendant contends that we are in error in holding that the burden of proof devolved on defendant to show that plaintiff's benefit under the Act of 1913 was greater than the benefit provided by the plan.   Defendant cites *Mercer* v. *Germania Ins. Co., post,* p. 410, 171 Pac. 412.   In that case plaintiff sued on a policy of fire insurance written in favor of her husband.   The policy provided that it should be void if the interest of the insured were anything other than sole and unconditional ownership.   Plaintiff contended that defendant was estopped to rely on the above provision in the policy, but her estoppel was pleaded only in the reply.   It was held that she could not recover.   The contract on which she relied was inconsistent on its face with her right of recovery.

In the case at bar there is nothing in the contract which on its face precludes a recovery by plaintiff. There is no presumption that defendant had accepted the provisions of Chapter 112 of the Laws of 1913, nor is such acceptance alleged in the complaint.   Notwithstanding Section 32 of Article IX of the plan, plaintiff was entitled *prima facie* to recover.   Her rights under the act of 1913 were a defense which it devolved on defendant to allege and prove.   These conclusions are supported by the opinion of Mr. Justice Moore in *Olds* v. *Olds, ante,* p. 209 (171 Pac. 1046), decided April 2,

1918. Plaintiff's complaint is sufficient and her proof corresponds with her allegations.

Defendant relies on *Clark* v. *New England Tel. & Tel. Co.* (Mass.), 118 N. E. 348. This case is based on a plan similar to that with which we are concerned. The Massachusetts court holds that where the facts are in dispute the finding of the committee thereon is conclusive. In the instant case the facts are not in dispute. The answer admits the facts on which plaintiff's right to recover is based. The reasoning of the Massachusetts court is in entire harmony with our former opinion and the rule of construction applied conforms to the views above expressed.

15. Defendant calls our attention to the fact that under our industrial accident statute, Laws of 1913, page 199, in case plaintiff marries she is entitled to receive the equivalent of ten monthly allowances, or $300. We think that this sum as well as the moneys which plaintiff has already received should be deducted from the sum of $2,700 provided by the plan. Plaintiff admits in her petition that the sum of $30 a month has been paid her since March 15, 1915. Plaintiff asks that the case be remanded with directions to enter the judgment to which she is entitled.

The former opinion will therefore be modified. The judgment will be reversed and the Circuit Court will be directed to enter a judgment in favor of plaintiff for $1,320.    FORMER OPINION MODIFIED.

McBRIDE, C. J., and MOORE and BEAN, JJ., concur.