142 N.J. Super. 465 (1976)
361 A.2d 636
IN THE MATTER OF THE ESTATE OF PANAYOTI E. GREGORIOU.
Superior Court of New Jersey, Morris County Court, Probate Division.
Decided June 1, 1976.
*466 Mr. Albert B. Jeffers for estate of Panayoti E. Gregoriou.
*467 Mr. Yale I. Lazris for First National City Bank (Messrs. Rosenstein and Lazris, attorneys).
Mr. Edward F. Breslin for John E. Deutsch, D.D.S. (Messrs. Breslin and Schepisi, attorneys).
GASCOYNE, J.C.C., Temporarily Assigned.
This case presents a question of novel impression in this State and no case directly in point has been found in any jurisdiction. The facts are simple but their chronology complicates the situation.
At the time of his death decedent was employed by Monsanto Company Monsanto at the executive or management level. In 1969 Monsanto promulgated what is termed as "The Monsanto Management Incentive Plan" (Plan). The avowed purpose of the Plan was "to attract and retain for the Company and its Subdivision personnel of exceptional ability; to motivate such personnel through added incentives to make a maximum contribution to greater profitability; to develop and maintain a highly competent management team; and to be competitive with other companies in the executive compensation area". The Plan has two components, (1) the 1969 Stock Option Plan and (2) the 1969 Bonus Plan. It is the latter with which we are concerned. Under the Plan the applicable accounting period for the "Performance Year" of 1973 was January 1, 1973 through December 31, 1973.
On December 12, 1973 decedent, as an "Eligible Participant" under the Plan, was recommended by his appropriate superior under the Plan to receive a bonus of $13,000. All that remained under the Plan was approval by the committee appointed to administer the Plan under its terms. No "Eligible Participant" recommended for bonus award by his "Managing Director or applicable Vice-President" was denied a bonus award in 1973. It should be noted that the Plan provided that the bonus awards "shall be paid from the bonus reserve" and that the committee "(B)efore the determination *468 of bonus award each year" shall receive a report from a firm of certified public accountants acting as auditors "the total amount then in the bonus reserve and the maximum amount which the Company may, in its discretion, credit to the bonus reserve in respect to such year."
On December 16, 1973 Gregoriou passed away. On December 20, 1973, pursuant to the guidelines under the Plan which permitted an increment of up to 25% of the maximum entitlement, his award was increased to $16,000. Monsanto paid the $16,000 on or about January 24, 1974. Other facts are not germane for the disposition of this case, although the fact that the estate is insolvent crystalized the situation.
The administratrix of decedent's estate made application for an inventory, to which exceptions were taken by creditors. This matter comes on for instructions from the Court as to whether the $16,000 award should be included as part of decedent's estate and subject to distribution among creditors pursuant to statute.
In order to understand the application of the word "bonus" in the context of this case and to distinguish such application from cases relied upon by counsel, a definition would be helpful. "Bonus" has been defined by The American Heritage Dictionary of the English Language as "(1) Something given or paid in addition to the usual or expected. * * * (4) An extra dividend paid from profits. * * * Bonus usually applies to money in excess of what is normally received or strictly due, given in consideration of superior achievement or as a share of the profits." The bulk of the cases relied upon by counsel concerned whether a right had vested, ripened or matured to the extent that the employee had a suable obligation against the employer.[1] While enlightening, *469 these cases are of minor assistance since the employer herein, Monsanto, has recognized its obligation and paid decedent's representative.
While not directly in point, the analysis by the court in Hainline v. General Motors Corp., 444 F.2d 1250 (6 Cir.1971), is of aid. Plaintiff in that case left his employment due to the delicate health of his young daughter necessitating the relocation of the family in a warmer climate. The issue presented was whether plaintiff was entitled to undistributed portions of an accrued bonus. The court pointed out (at 1253) "Bonus and profit sharing plans are a common device for rewarding incentive and industry, retaining competent executives, and paying additional compensation in a manner having favorable tax consequences." See also, Chief Justice Weintraub's opinion in Russell v. Princeton Laboratories, Inc., 50 N.J. 30, 35 (1967). The court in Hainline, supra, then went on to distinguish other opinions by other courts[2] and to analyze the authority of the committee in awarding a bonus.
*470 In the present case, pursuant to the terms of the Plan every "Eligible Participant" knew the general range of his award. Since decedent earned a salary of $50,000 during the year, he would have an award range norm of approximately $12,800 to $13,000. This sum was geared as much to decedent's salary as it was to his performance during the calendar year. Thus, the $13,000 initially awarded by Monsanto vested so that decedent had he lived, or his legal representative on his death, would have had an enforceable actionable right. There is no question in this court's mind that decedent or his representative would have been entitled to summary judgment as to this sum under the facts herein.
As has already been observed, under the terms of the Plan, the committee had the discretionary power to increase the award of $13,000 up to 25%. The committee exercised its discretion and awarded an additional $3,000. No "Eligible Participant" could know what the committee would do with the 25% increment since this was dependent on factors such as performance of his division as well as other intangibles within the discretion of the committee. Therefore, the additional $3,000 should be treated as being in the nature of a gratuity to decedent's widow.
Based on the foregoing, $13,000 is includable as part of decedent's estate and the balance is payable to decedent's widow.
NOTES
[1] Russell v. Princeton Laboratories, Inc., 50 N.J. 30 (1967) (profit-sharing plan); Siegel v. First Pennsylvania Banking & Trust Co., 201 F. Supp. 664 (E.D. Pa. 1961) (profit-sharing plan); Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 171 N.E.2d 518 (Sup. Ct. 1960) (pension plan); Wilson v. Rudolph Wurlitzer Co., 48 Ohio App. 450, 194 N.E. 441 (Ct. App. 1934) (pension plan); David v. Veitscher Magnesitwerke Actien Gesellschaft, 348 Pa. 335, 35 A.2d 346 (Sup. Ct. 1944) (retirement pension pursuant to employment contract); Levitt v. Billy Penn Corp., 219 Pa. Super. 499, 283 A.2d 873 (Super. Ct. 1971) (pension plan); Psutka v. Michigan Alkali Co., 274 Mich. 318, 264 N.W. 385 (Sup. Ct. 1936) (pension plan); Schofield v. Zion's Co-op. Mercantile Institution, 85 Utah 281, 39 P.2d 342 (Sup. Ct. 1934) (Pension Plan); Scott v. J.F. Duthie & Co., 125 Wash. 470, 216 P. 853 (Sup. Ct. 1923) (bonus pursuant to employment contract). See also, Annotation, "Promise by employer to pay bonus as creating valid and enforceable contract" 43 A.L.R.3d 503; Annotation, "Rights and liabilities as between employer and employee with respect to general bonus or profit-sharing plan" 81 A.L.R.2d 1066.
[2] O'Madigan v. General Motors Corp., 202 F. Supp. 190 (E.D. Mo. 1961), aff'd per curiam 312 F.2d 250 (8 Cir.1963); Parrish v. General Motors Corp., 137 So.2d 255 (Fla. App. 1962); Coats v. General Motors Corp., 3 Cal. App.2d 340, 39 P.2d 838 (D. Ct. App. 1934), rev'd and remanded, 11 Cal.2d 601, 81 P.2d 906 (Sup. Ct. 1938).